UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CARA ANAM, individually, and SAYEED ANAM, individually and as Independent Administrator of the ESTATE OF ZACHARY ANAM,<br><br>PLAINTIFFS.<br><br>v.<br><br>CITY OF AUSTIN, TEXAS,<br><br>DEFENDANT. | Cause of Action No. 1:21-cv-26 |

**<u>PLAINTIFFS' COMPLAINT</u>**

Plaintiffs Cara and Sayeed Anam bring this wrongful death lawsuit against the City of Austin, Texas, because Austin Police Department officers' violations of their son's Fourth and Fourteenth Amendment rights caused his death, and will show:

### I.   PARTIES

A. *Plaintiffs*

1. Cara Anam is the natural mother of the decedent, her beloved son, Zachary Anam. Ms. Anam resides in Travis County, Texas.

2. Sayeed Anam is the natural father of the decedent, his beloved son, Zachary Anam. Mr. Anam resides in Travis County, Texas.

3. Mr. Anam is the independent administrator of the Estate of Zachary Anam, as appointed by the Travis County Probate Court. Zachary's sole heirs-at-law are his parents, the Plaintiffs.

4. Zachary had no surviving spouse, and no children. Zachary died intestate.

5. Mr. and Mrs. Anam bring this suit as the sole wrongful death beneficiaries of Zachary Anam.

B. *Defendant*

6. The City of Austin is a Texas municipality that operates the Austin Police Department. At all relevant times, the APD policymaker was Chief Brian Manley. The City may be served through the City Clerk at 301 W. 2nd Street, Austin, TX 78701. *Service is requested*.

## II. JURISDICTION AND VENUE

7. This case is brought pursuant to 42 U.S.C. § 1983. Thus, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1342(a)(3).

8. This Court has general personal jurisdiction over the Defendant as it operates in the Western District of Texas.

9. Venue is proper in this Court as all relevant events occurred within the Austin Division. *See* 28 U.S.C. § 1391(b).

## III. FACTS

10. The City of Austin's police officers have a pattern, practice, and custom of performing plainly incompetent and unreasonable searches of arrestees and pretrial detainees. As a result, arrestees and pretrial detainees are frequently left carrying deadly weapons and other contraband while in APD custody.

11. After arresting pretrial detainees, APD officers typically take the detainees to the Travis County Jail. At the Travis County Jail, jailers thoroughly search the detainees before providing them with a jail uniform. During these searches, the Travis County jailers

routinely discover deadly weapons and other contraband that the APD officers' plainly incompetent and unreasonable searches missed.

12. In the years preceding Zachary's death, jail officers found weapons on detainees arrested and (allegedly) searched by APD officers on average more than once a month.

13. Jail officers found non-weapons contraband (such as illegal drugs) even more often.

14. In 2013, APD officers missed 18 weapons later found by Travis County jailers, including a handgun in a detainee's waistband.

15. In 2014, APD officers missed 9 weapons later found by Travis County jailers.

16. In 2015, APD officers missed 12 weapons later found by Travis County jailers.

17. In 2017, APD officers missed 15 weapons later found by Travis County jailers, including another handgun, a blowtorch, and a knife with a 6-inch long blade. Of course, this number does not include Zachary Anam's handgun, because he died before even reaching the jail.

18. Unsurprisingly, these weapons were most often found concealed in detainees' waistbands or pants pockets, locations where any competent and reasonable search would have discovered them.

19. As a result, arrestees and pretrial detainees routinely keep items they should be dispossessed of while they are in APD squad cars during transportation to the jail.

20. Shockingly, one example of this custom, pattern, and practice includes Zachary. During a previous arrest, officers failed to search him sufficiently to confiscate his smart phone, which he used to place a call to his criminal defense lawyer *from the backseat of the squad car*.

21. Though obviously less dangerous than actual weapons, contraband like cell phones also pose a danger to law enforcement officers. For example, a suspect could call for help to escape, inform people about officers' locations, or instruct people how to destroy evidence.

22. APD's policymakers, including Chief Manley (and his predecessors), were aware of this disturbing pattern, practice, and custom, but took no measures to ensure detainees were immediately searched reasonably to confiscate contraband (including weapons).

23. Despite this disturbing pattern of incidents, APD policymakers did not implement new, different, or additional training (or retraining) to ensure that officers conducted reasonable searches to discover weapons and contraband.

24. In fact, upon information and belief, Chief Manley and other APD policymakers made no changes to APD search policies or training prior to Zachary's suicide.

25. In addition to confiscating weapons to protect officers and bystanders, it is well known to law enforcement officials, including Chief Manley, prior policymakers such as former Chief Art Acevedo, and Officer Wall (who failed to search Zachary), that confiscating weapons is necessary to protect detainees from self harm.

26. Unfortunately, incidents where detainees shoot themselves in police squad cars occur with frightening regularity, and are the subject to extensive news media coverage when they do occur.[1] For example, just a few years before Zachary's death, another

---

[1] *See, e.g.*, Billy Gunn, "Experts: Suicide of Handcuffed Man in Squad Car Rare, But Not Unique," ACADIANA ADVOCATE (La.), Sept. 1, 2014 (available at: https://www.theadvocate.com/acadiana/news/article_adeda750-6d26-5e5d-a5f9-dcb3de417bbd.html); Hannah Rappleye, "Handcuffed Black Youth Shot Himself to Death, Says Coroner," NBC NEWS.COM, Aug. 25, 2014 (available at: https://www.nbcnews.com/news/investigations/handcuffed-black-youth-shot-himself-death-says-coroner-n185016); Jeff Branscome, "Suicidal Man Shoots Himself While

4

despondent young man shot himself in the head with a handgun that Harris County, Texas deputies failed to find and secure.[2]

27. Thus, it is eminently foreseeable that a despondent arrestee/detainee could be seriously injured or killed if a reasonable search is not performed to confiscate any weapons.

28. It is just as foreseeable that a failure to perform a reasonable search could result in serious injuries or death to an officer.

29. On or about January 9, 2017, Zachary was detained at Barton Creek Mall by mall security officers, and accused of shoplifting. The mall officers cursorily searched Zachary, confiscated several items from his person, then called APD to arrest Zachary. The mall officers, however, did not confiscate or locate a handgun in a holster clipped to the front of

---

Handcuffed in in Back of Spotslyvania Sheriff's Office SUV," FREDRICKSBURG FREE LANCE-STAR, Sept. 10, 2018 (available at: https://www.fredericksburg.com/news/local/spotsylvania/suicidal-man-shoots-himself-while-handcuffed-in-back-of-spotsylvania/article_eb16f599-06f3-517d-9629-2b4be70f125c.html); Latifah Muhammed, "Ohio Police Claim Teen Committed Suicide While Handcuffed in the Back of a Squad Car," VIBE MAGAZINE, Aug. 30, 2017 (available at: https://www.vibe.com/2017/08/ohio-police-xavier-mcmullen-suicide-claim-handcuffed-squad-car); Philip Caulfield, "Chavis Carter Committed Suicide in Back of Police Car: Autopsy," N.Y. DAILY NEWS, Aug. 20, 2012 (available at: https://www.nydailynews.com/news/national/chavis-carter-commited-suicide-back-police-car-autopsy-article-1.1140421); Michael Tackett, "Black Youth's Death Stirs Indianapolis Tension," CHICAGO TRIBUNE, Oct. 2, 1987 (available at: https://www.chicagotribune.com/news/ct-xpm-1987-10-02-8703140683-story.html); Leyla Santiago, "Durham Chief: Teen Shot Self in Head While in Police Car," WRAL.COM (N.C.), Dec. 11, 2013 (available at: https://www.wral.com/family-wants-fbi-probe-of-durham-pd-after-teen-s-death-/13206475/).

[2] *See*, *e.g.*, Mihn Dam, "Dad of Teen Who Shot Self in Patrol Car Sues County," HOUSTON CHRONICLE, June 13, 2013 (available at: https://www.houstonchronicle.com/news/houston-texas/houston/article/Dad-of-teen-who-shot-self-in-patrol-car-sues-4599549.php).

5

Zachary's waistband. Macy's employees have testified it was not their practice to search a detainee's waistband, or "below the belt" area.

30. Officer Iven Wall responded to the scene. Though he took Zachary into custody, he did not perform a reasonable search (or, alternatively, performed a plainly incompetent search), though he has testified he was required to competently search suspects to discover weapons (and other contraband).

31. Officer Wall admitted that the search, if he performed one at all, was unreasonable.

32. Had Wall performed a reasonable search, he would have discovered the barely concealed handgun in a holster located in an obvious location.

33. Without reasonably searching Zachary, Wall placed the despondent young man in the backseat of his squad car to drive Zachary to the Travis County Jail.

34. During the short drive to the jail, Wall mocked the despondent Zachary, telling Zachary he would "spend the rest of [his] life behind bars," and "if you've got anything shoved up your butt you better come out with it, because when you get to the jail you're going to be searched anyhow with another felony charge added," and "dude, you're no good at being a criminal."

35. A few blocks from the jail, the despondent Zachary asked Wall, "Officer, if I'm feeling suicidal, now is the time to tell you, right?" Wall responded curtly, "they'll take care of you at the jail."

36. Despondent, Zachary replied, "I don't know if I'm going to make it" before telling Wall, "I have a loaded firearm to my head, Officer!"

37. Wall did nothing to help Zachary. Instead, he stopped the squad car, and bailed out the driver's door, leaving Zachary despondent, alone, and armed in the car.

38. After Wall exited the squad car, no one, including Wall, attempted to even speak with Zachary via the car's radio or loudspeaker, or another squad car's loudspeaker system, though this could have easily been done.

39. As a consequence, Zachary was left alone for several minutes in a suicidal state before he fired a single shot into his own head.

40. Zachary died at the hospital later that day from his injuries.

IV. CAUSE OF ACTION

A. 42 U.S.C. § 1983 VIOLATIONS OF FOURTH AND FOURTEENTH AMENDMENT – PROTECTION AGAINST UNREASONABLE SEARCHES

41. Plaintiffs incorporate the foregoing and further allege:

42. The United States' Constitution's Fourth Amendment protects citizens "against unreasonable searches."

43. The Fourteenth Amendment secures the protections of the Bill of Rights for citizens against the States and their subdivisions.

44. A reasonable search of Zachary would have uncovered the handgun held in Zachary's waistband with a holster.

45. APD officers had a pattern, practice, and/or custom of performing unreasonable searches that failed to uncover deadly weapons and other contraband. Manley (and other policymakers) were subjectively aware of the pattern of similar incidents of unreasonable searches that occurred before Zachary's death.

46. Furthermore, APD had a policy, practice, and/or custom of failing to train its officers how to conduct a reasonable search to locate weapons and other contraband. Failing to adequately train (or re-train) officers about performing reasonable searches to locate obvious contraband is a particular omission in the City's training program that would

cause City employees to violate the constitutional rights of members of the public they encountered, like Zachary. Nevertheless, though Manley (and other policymakers) knew of these obvious deficiencies, he chose to retain the City's dangerously flawed training (and re-training) program.

47. Had Wall been adequately trained, he would have performed a reasonable search and discovered the handgun.

48. These patterns, practices, and customs were actually known, constructively known, and/or ratified by APD's policymakers, including Chief Manley (and his predecessor, Art Acevedo).

49. Chief Manley and other APD policymakers were deliberately indifferent to these dangerous policies, practices, and customs, by failing to train, inadequately training, and by making no changes to policies in the face of a dangerous pattern of unreasonable searches.

50. The known and obvious consequence of failing to reasonably search detainees for weapons (and contraband) and of continuing a deficient, inadequate, and dangerous training (or lack of training) program is that APD officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

51. Consequently, the policies delineated above were a moving force of Plaintiffs' constitutional deprivations and injuries, and proximately caused severe damages, including Zachary's death.

### B.   42 U.S.C. § 1983 VIOLATIONS OF FOURTEENTH AMENDMENT – PROTECTION FROM KNOWN RISK OF SUICIDE

52. Plaintiffs incorporate the foregoing and further allege:

53. The Fourteenth Amendment requires that law enforcement agencies protect people it detains from a known risk of suicide.

54. Wall knew Zachary was at risk of suicide, as Zachary expressed suicidal ideations to Wall before his death, which Wall ignored. Thus, Wall was deliberately indifferent to Zachary's known risk of suicide, and violated Zachary's Fourteenth Amendment rights.

55. Upon information and belief, APD has no policy addressing suicide prevention.

56. Upon information and belief, APD does not train officers how to address armed, suicidal subjects in squad cars.

57. Upon information and belief, Chief Manley (and his predecessor), is considered a competent policymaker by the City of Austin. As such, he knew, or should have known, of the risk of detainees committing suicide in custody if weapons are not taken from detainees, as any competent policymaker would.

58. Chief Manley (and/or his predecessor) knew of the pattern of unreasonable searches failing to discover weapons and other contraband.

59. Chief Manley (and/or his predecessor) knew that APD officers would encounter suicidal detainees, and that some of these detainees would be armed.

60. Despite knowing that suicides could (and do) occur in custody and squad cars, and knowing the APD officers were routinely failing to confiscate weapons and contraband, Chief Manley (and other APD policymakers), did not implement any policies (including additional training or re-training) to address this known, dangerous situation.

61. As such, Chief Manley (and other APD policymakers) were deliberately indifferent to the risk that detainees with suicidal tendencies face, including committing suicide in custody and in squad cars.

62. The known and obvious consequence of failing to provide policies and training addressing the searching of suspects and/or the risk of suicide in squad cars is that APD officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

63. Consequently, the policies delineated above were a moving force of Plaintiffs' constitutional deprivations and injuries, and proximately caused severe damages, including Zachary's death.

## V.  DAMAGES

64. Defendant deprived Zachary Anam of his civil rights under the United States Constitution and federal law. Moreover, these acts and omissions by Defendant, its agents, employees, and/or representative, proximately caused and/or were the moving force of the injuries and damages to Plaintiffs and proximately caused and/or were the moving force of the wrongful death of Zachary Anam. Accordingly, Plaintiffs, in their individual capacities, in their capacities as heirs-at-law and on behalf of the Estate of Zachary Anam, and as representatives of all wrongful death beneficiaries of Zachary Anam, assert claims under 42 U.S.C. § 1983 and the Texas wrongful death and survivorship statutes.

65. Plaintiffs Sayeed and Cara Anam, in their capacities as heirs-at-law on behalf of the Estate of Jason Roque, have incurred damages including, but not limited to, the following:

   a. Conscious physical pain and mental anguish suffered by Zachary Anam before he died;
   b. Medical expenses prior to his death; and,
   c. Funeral and burial expense.

66. Plaintiffs Sayeed and Cara Anam, in their individual capacities asserting wrongful death claims on behalf of all wrongful death beneficiaries, have incurred damages including, but not limited to, the following:

   a. Past and future mental anguish;
   b. Past and future medical expenses;
   c. Past and future loss of companionship, society, services, and affection with their son, Zachary Anam.

67. Plaintiffs are further entitled to reasonable attorneys' fees and expenses (including expert expenses) pursuant to 42 U.S.C. § 1988.

## VI.   JURY DEMAND

68. Pursuant to Federal Rule of Civil Procedure 48, Plaintiffs hereby request a jury trial.

## VII.   PRAYER FOR RELIEF

69. Accordingly, Plaintiffs ask that judgment be awarded against Defendants for:

   a. Compensatory damages;

    b. Attorneys' fees, including reasonable and necessary expenses such as expert fees, pursuant to 42 U.S.C. § 1988;

    c. Costs of court;

    d. Pre and post-judgment interest at the highest rate allowable under the law; and,

    e. All other relief to which Plaintiffs are justly entitled.

Dated: January 8, 2021.

                  Respectfully submitted,

                  **EDWARDS LAW**
                  1101 East 11th Street
                  Tel.  512-623-7727
                  Fax.  512-623-7729

              By   /s/ Jeff Edwards
                  JEFF EDWARDS
                  State Bar No. 24014406
                  jeff@edwards-law.com
                  SCOTT MEDLOCK
                  State Bar No. 24044783
                  scott@edwards-law.com
                  MICHAEL SINGLEY
                  State Bar No. 00794642
                  mike@edwards-law.com
                  DAVID JAMES
                  State Bar No. 24092572
                  david@edwards-law.com

              **ATTORNEYS FOR PLAINTIFFS**